**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

LOUIS JOSEPH BAHAMONDE,
          *Defendant-Appellant.*

No. 04-50618

D.C. No.
CR-04-01463-JAH

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
August 2, 2005—Pasadena, California

Filed April 25, 2006

Before: William C. Canby, Jr., Alex Kozinski, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Canby;
Dissent by Judge Rawlinson

## COUNSEL

Kurt D. Hermansen, Federal Defenders of San Diego, Inc., San Diego, California, for the appellant.

Stephen R. Cook, Assistant United States Attorney, San Diego, California, for the appellee.

## OPINION

CANBY, Circuit Judge:

Louis Bahamonde appeals his jury convictions for knowingly importing marijuana and possession of marijuana with intent to distribute. 21 U.S.C. §§ 841(a)(1), 952, 960. Bahamonde contends that the district court erred by excluding the testimony of the government's case agent, called by the defense, on the sole ground that Bahamonde failed to comply with the Department of Homeland Security's regulations governing testimony by its employees. We reverse for two reasons: (1) the regulation, which required disclosure by Bahamonde without reciprocal disclosure by the government, violated Bahamonde's due process rights, and (2) the district court abridged Bahamonde's Sixth Amendment rights by imposing the severe sanction of exclusion of the agent's entire testimony without weighing the countervailing interests, such as Bahamonde's constitutional rights, prejudice to his defense, or the availability of alternative sanctions.[1]

## BACKGROUND

In the Southern District of California, a grand jury indicted Bahamonde for knowingly importing marijuana and possession of marijuana with intent to distribute. 21 U.S.C. §§ 841(a)(1), 952, 960. A jury convicted him of both counts.

---

[1]Bahamonde also contends that the indictment must be dismissed because of improper instructions to the grand jury, but this challenge is foreclosed by our recent decision in *United States v. Navarro-Vargas*, 408 F.3d 1184 (9th Cir.) (en banc), *cert. denied*, 126 S. Ct. 736 (2005). Our disposition of this appeal makes it unnecessary for us to address Bahamonde's other contentions.

The district court sentenced him to twenty-seven months in prison on each count, to run concurrently, followed by three years of supervised release.

Bahamonde was convicted because, four hours after driving from California into Tijuana, Mexico, he attempted to drive back into the United States carrying twenty-seven kilograms of marijuana hidden in his car. Customs and Border Protection Officers stopped Bahamonde's car and searched it because Bahamonde appeared nervous at the port of entry. The case agent, Don Rodmel, interviewed Bahamonde, arrested him, and conducted the investigation leading to Bahamonde's prosecution.

During questioning and at trial, Bahamonde maintained that, although there was a large quantity of marijuana hidden in the car, he did not know it was there. He contended that the acquaintance from whom he had bought the car, Raul Fuentes, must have hidden the marijuana in the car without telling Bahamonde. He further contended that, at the time of its investigation of Bahamonde's case, the government possessed substantial information about Fuentes, including his involvement in transporting controlled substances across the border. Bahamonde sought to show that the government failed to investigate the possibility that Fuentes, and not Bahamonde, was the guilty party and that this failure resulted in the wrong man being prosecuted.

Agent Rodmel attended the entire trial, sat next to the prosecutor at the prosecutor's table, assisted him throughout, and was listed on the government's witness list. When Bahamonde attempted to call Agent Rodmel as a witness, however, the government objected on the sole ground that Bahamonde had failed to comply with 6 C.F.R. § 5.45(a) (requiring a litigant to "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought" from Department of Homeland Security witnesses).

When the district judge asked Bahamonde's counsel why he had failed to comply, Bahamonde's counsel stated that he believed that the regulation was not a requirement; he merely followed it sometimes as a courtesy to the government. Bahamonde's counsel stated, however, that he would "be happy to give [Agent Rodmel] a C.F.R. letter right now." The district court ruled that this offer to comply was untimely, and excluded the agent's testimony. In later denying Bahamonde's motion for a mistrial, the district judge specified that he excluded the witness because Bahamonde's counsel knew of the regulation and of the fact that he would need Agent Rodmel's testimony, but failed to comply with the regulation.

## ANALYSIS

We conclude that the district court erred in excluding the agent's testimony for two reasons.[2]

### A. The Regulation Violates *Wardius*'s Reciprocal Discovery Requirement

[1] The regulation of the Department of Homeland Security provides, in part:

> If official information is sought, through testimony or otherwise, by a request or demand, the party seeking such . . . testimony must . . . set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought. . . . Department employees may only . . . testify concern-

---

[2]We review de novo whether the district court violated Bahamonde's due process or compulsory process rights. *See Guam v. Palomo*, 35 F.3d 368, 374 (9th Cir. 1994), *overruled on other grounds by United States v. Galindo-Gallegos*, 255 F.3d 1154 (9th Cir. 2001); *United States v. Lewis*, 979 F.2d 1372, 1374 (9th Cir. 1992). In other respects, we review for an abuse of discretion whether the district court erred by admitting or excluding evidence. *United States v. Hernandez*, 109 F.3d 1450, 1452 (9th Cir. 1997) (per curiam).

ing those matters which were specified in writing and properly approved by the appropriate Department official designated in § 5.44.

6 C.F.R. § 5.45(a).[3][4] The regulation contains no requirement that the government specify the nature of testimony or other evidence that it intends to use to rebut the demanded testimony.

[2] The regulation, as applied in this criminal prosecution, violates due process by failing to provide reciprocal discovery. The governing principle is established by *Wardius v. Oregon*, 412 U.S. 470 (1973). In *Wardius*, the Supreme Court addressed Oregon's requirement that a criminal defendant seeking to offer alibi evidence give notice in advance, "which

---

[3]The subsection provides in full:

(a) If official information is sought, through testimony or otherwise, by a request or demand, the party seeking such release or testimony must (except as otherwise required by federal law or authorized by the Office of the General Counsel) set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought. Where documents or other materials are sought, the party should provide a description using the types of information suggested in § 5.3(b). Subject to § 5.47, Department employees may only produce, disclose, release, comment upon, or testify concerning those matters which were specified in writing and properly approved by the appropriate Department official designated in § 5.44. See United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951). The Office of General Counsel may waive the requirement of this subsection in appropriate circumstances.

[4]Section 5.45(a) does not create a privilege against divulging evidence because its enabling statute, 5 U.S.C. § 301, states that "[t]his section does not authorize withholding information from the public or limiting the availability of records to the public." *See Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994). The Supreme Court in a civil case has held, however, that a government agency can require employees to secure approval of the agency head before responding to a subpoena. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467-68 (1951).

notice shall state specifically the place or places where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence." Or. Rev. Stat. § 135.875 (since renumbered as § 135.455). The statute imposed no reciprocal requirement on the State to provide names and addresses of witnesses the State intended to call to rebut the alibi. The Supreme Court held that this imbalance of discovery requirements violated due process when the statute was invoked to exclude the testimony of the defendant's alibi witness. *Wardius*, 412 U.S. at 472. The Court stated:

> It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.

*Id.* at 476. This same unfairness inheres in the present criminal case. Bahamonde was required to state with specificity the testimony he expected from Agent Rodmel but the government was not required at any time to state what evidence it expected to offer in rebuttal, either from Rodmel or anyone else.[5] Nor was there any other requirement in force to compel the government to reveal that information. *See* FED. R. CRIM. P. 16 (requiring statements of expected testimony only with regard to expert witnesses).

---

[5]The dissenting opinion here contends that *Wardius* is inapplicable because the Department of Homeland Security regulation "was promulgated, not as a discovery device, but as a means to control the flow of information from the agency and insure that no information was disclosed that should have remained secreted." *Infra*, p. 4609. But the regulation sought not only to control the release of information; it *required* disclosure of information from Bahamonde without offering corresponding information. That kind of imbalance is what *Wardius* viewed as fundamentally unfair.

**[3]** The government points to two differences between *Wardius* and this case. First, Washington "grant[ed] no discovery rights to criminal defendants, and indeed, [did] not even provide defendants with bills of particulars." *Wardius*, 412 U.S. at 475. Federal criminal prosecutions, on the other hand, allow for liberal discovery. Second, whereas alibi defenses frequently involve people and places unrelated to the charged offenses, and thus potentially not covered by traditional discovery rules, the information Bahamonde sought from Agent Rodmel was available to both parties through the regular discovery process. According to the government, forcing the defendant to disclose what he planned to ask Agent Rodmel didn't give the government any practical advantage. *Wardius* held, though, "that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street," and "if there is to be any imbalance in discovery rights, it should work in the defendant's favor." *Id.* at 475 & n.9. Nothing in *Wardius* limits its reasoning to alibi defenses or trial processes entirely lacking in discovery.

**[4]** The regulation, as applied in this case, accordingly falls squarely within the rule of *Wardius*.[6] We cannot say, on this record, that this constitutional error was harmless beyond a

---

[6]Our decision does not address the validity of the regulation in other circumstances or contexts. *See, e.g.*, *Ragen*, 340 U.S. at 467-68 (upholding, in a civil case, order of Department of Justice prohibiting employees from responding to subpoenas without permission of the Attorney General or his Assistants). Nor does our decision conflict with *United States v. Henson*, 123 F.3d 1226 (9th Cir. 1997), *overruling on other grounds recognized by United States v. Foster*, 165 F.3d 689, 692 n.5 (9th Cir. 1999) (en banc). In *Henson*, the district court quashed the defendant's subpoena of a Bureau of Alcohol, Tobacco, and Firearms (ATF) policy manual "because the evidence could be obtained by questioning the witnesses directly" and "because Henson did not follow the procedures for obtaining ATF records outlined" in the regulation. *Id.* at 1237. The panel affirmed because "[t]here was nothing to prevent Henson from immediately serving another subpoena on the ATF that followed the ATF guidelines." *Id.* And Henson was allowed to cross-examine witnesses on the contents of the manual. *Henson* did not address a situation where the defendant was required to state precisely how he planned to use the evidence at trial, and thus, quashing the subpoena did not implicate *Wardius*. Here we deal only with the application of the regulation requiring a criminal defendant to state how he plans to use material evidence when the government is under no reciprocal discovery obligation.

reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (stating standard for harmlessness of constitutional error). The marijuana was hidden behind the rear seat (the inspector felt a hard spot in the seat and used a screwdriver to pry the backrest aside to reveal the marijuana), in the spare tire, in the rear bumper, and in the rear door panels. We cannot say beyond a reasonable doubt that a jury would reject a defense based on testimony that the government failed to investigate the possibility that the former owner, a drug trafficker, had left the marijuana in the car without the knowledge of Bahamonde. We accordingly reverse Bahamonde's conviction. *See Wardius*, 412 U.S. at 479.

## B. Bahamonde Can Challenge the Regulation Without Having Attempted to Comply With It

The government defends the district court's ruling by relying primarily on three cases from other circuits, each of which precluded a defendant from challenging a very similar regulation because he had made no attempt to comply with its requirements and secure a determination whether the government agency would make the information available. *See United States v. Allen*, 554 F.2d 398, 406-407 (10th Cir. 1977); *United States v. Marino*, 658 F.2d 1120, 1125-26 (6th Cir. 1981) (following *Allen* but also noting that excluded evidence was not "material"); *United States v. Wallace*, 32 F.3d 921, 928-29 (5th Cir. 1994) (following *Allen* and *Marino* but also noting that excluded evidence was "cumulative and marginally relevant"). None of these cases, however, addresses the problem of imbalance of discovery obligations that were found to cause a constitutional violation in *Wardius*, and it is not clear that this issue was directly raised in the three cases.

[5] The issue is squarely raised here, however, and *Wardius* itself provides the answer. In *Wardius*, the government argued that, because the defendant did not comply with the discovery rule, he should not be allowed to challenge it as violating due process, particularly because the state courts might have read

a reciprocal discovery right into the statute and avoided the constitutional issue. *Wardius*, 412 U.S. at 477. The Court rejected this argument because it was speculative, and permitted the defendant to challenge the statute without complying with its disclosure requirements. *Id.* At 477-78. The Court stated:

> To be sure, the state court might have construed the Oregon statutes so as to save the constitutionality of the notice requirement and granted reciprocal discovery rights. But the state court would also have had the option of reading state law as precluding reciprocal discovery. If the court adopted this latter alternative, it would have had to strike down the notice-of-alibi requirement. But petitioner would have had only a Pyrrhic victory, since once having given the State his alibi information, he could not have retracted it. Thus, under this scenario, even though the notice-of-alibi rule would have been invalidated, the State would still have had the benefit of nonreciprocal discovery rights in petitioner's case — the very result which petitioner wishes to avoid by challenging the rule.
>
> . . . [P]etitioner cannot be faulted for taking the legislature at its word.

*Id.* Here, too, Bahamonde cannot be faulted for taking the regulation as written, with its absence of any requirement of reciprocal discovery. He need not reveal the nature of his anticipated defense testimony in order to challenge the regulation that improperly requires him to reveal such testimony. If such a challenge succeeded, he still would have revealed his defense. We accordingly permit him to challenge the regulation without first complying with its threshold disclosure requirement.

### C. The District Court Abused Its Discretion By Failing To Weigh Countervailing Interests Before Excluding Testimony

[6] We require a district court, before excluding a defense witness's testimony, to balance the countervailing interests in order to ensure that the exclusion complies with a criminal defendant's Sixth Amendment rights. *See Eckert v. Tansy*, 936 F.2d 444, 446 (9th Cir. 1991) (balancing interests); *Fendler v. Goldsmith*, 728 F.2d 1181, 1187-90 (9th Cir. 1983); *see also Taylor v. Illinois*, 484 U.S. 400, 414-15 (1988). The factors to be weighed include " '[t]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence; the interests in the fair and efficient administration of justice; . . . the potential prejudice to the truth determining function of the trial process' . . . the ease with which one can comply with the statute[;] and whether failure to comply was willful and motivated by a desire to gain a tactical advantage at trial." *Eckert*, 936 F.2d at 446 (alteration in original) (quoting *Taylor*, 484 U.S. at 414-15). Additional (or, at least, differently worded) considerations include "the effectiveness of less severe sanctions, the impact of preclusion on the evidence at trial and the outcome of the case, the extent of prosecutorial surprise or prejudice, and whether the violation was willful." *Taylor*, 484 U.S. at 415 n.19 (citing *Fendler*, 728 F.2d at 1188-90). The "most significant" consideration is "how important was the witness?" *Fendler*, 728 F.2d at 1188.

[7] Agent Rodmel—the case agent—was very important. He interviewed Bahamonde, arrested him and conducted the investigation leading to criminal proceedings against Bahamonde. With the exception of Raul Fuentes, Agent Rodmel was the key player in the defense asserted by Bahamonde— failure of the government to investigate possible third-party culpability. *See United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (noting the legitimacy and importance of a defense of failure to investigate properly); *United States v.*

*Crosby*, 75 F.3d 1343, 1349 (9th Cir. 1996) (noting the same with respect to third-party culpability defense). The importance of Agent Rodmel to Bahamonde's defense accordingly weighs heavily in Bahamonde's favor.

**[8]** The remaining factors mostly weigh in Bahamonde's favor, but we do not belabor them because we are reversing in any event for violation of *Wardius*'s rule. Having not weighed *any* factors militating against exclusion of the witness, the district court abused its discretion. Moreover, the government does not suggest that it was prejudiced by the defendant's failure to follow the regulation.[7] Because the exclusion of Rodmel's testimony without weighing the countervailing interests impinged on his Sixth Amendment rights, the error is constitutional. *See Fendler*, 728 F.2d at 1190. We conclude that, like the constitutional error of applying the Department's regulation and for the same reasons, it is not harmless beyond a reasonable doubt. *See Chapman*, 386 U.S. at 24. This error, too, requires that we reverse Bahamonde's conviction and remand for a new trial.

## CONCLUSION

For the reasons stated, Bahamonde's convictions are reversed and the matter is remanded to the district court for a new trial.

**REVERSED and REMANDED.**

---

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. My primary disagreement with my

---

[7]At oral argument, we learned that the prosecutor had complied with the regulation and received permission from the Department of Homeland Security to have Agent Rodmel testify (at least on certain topics).

colleagues' resolution of this case is their characterization of the pivotal issue as one of reciprocal discovery, because I see this case as involving the agency's right to control the disclosure of information within its custody.

As the majority opinion relates, the Department of Homeland Security (DHS) has promulgated a regulation that requires one seeking official information from the agency to describe, in writing, "the nature and relevance of the information sought." 6 C.F.R. § 5.45(a). The regulation was promulgated, not as a discovery device, but as a means to control the flow of information from the agency and ensure that no information was disclosed that should have remained secreted. The regulation cites *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), as supporting authority. The majority opinion acknowledges, as it must, that *Ragen* upheld a Department of Justice regulation prohibiting its employees from responding to a subpoena absent permission. *See Majority Opinion*, p. 4604, n.6. The majority opinion then converts the issue into one involving a discovery request, although neither the parties nor the district court viewed it as such.

Discovery in criminal cases is governed by a detailed, well-defined, specific set of rules. *See* Fed. R. Cr. P. 16. The evolvement of discovery in criminal cases is reflected in the Advisory Committee Notes explaining the various amendments to Rule 16. *See id.*, Advisory Committee Notes. I would not blithely transpose a regulation governing release of documents into a non-sanctioned amendment of Rule 16. *See United States v. Alvarez*, 358 F.3d 1194, 1207 n.8 (9th Cir. 2004) (confirming that Rule 16 governs discovery in criminal cases and expressly excludes discovery of "statements made by prospective government witnesses") (citation omitted).

This is not a case where Bahamonde made a discovery request to the government which was improperly refused. Had such been the case, the federal rules provide the district court with an array of options to compel compliance. *See*, *e.g.* Fed.

R. Cr. P. 16(d). Rather, in this case, counsel for Bahamonde disregarded a regulation, of which he was well aware, to call a witness, not to conduct pre-trial discovery.

In my view, because this is not a discovery case, *Wardius v. Oregon*, 412 U.S. 470 (1973), does not control the outcome. Rather, this case is more akin to *United States v. Allen*, 554 F.2d 398 (10th Cir. 1977). In *Allen*, as in this case, the defendant made no effort to comply with the regulation requiring similar advance notice and summary of the desired testimony. In upholding the trial court's decision declining to compel the testimony, the Tenth Circuit held:

> Our record shows no effort by defendant to submit the affidavit or statement summarizing the testimony desired so that the Department could consider the request and determine whether to grant permission for the testimony. In view of this, we feel that defendant is in no position to claim error in the court's refusal to require testimony by the prosecutor. *We feel that the regulation controlling such disclosures by Department of Justice employees is valid.*

*Id.* at 407 (citations omitted) (emphasis added).

A similar result is warranted in this case. Bahamonde was not requesting pretrial discovery. He was seeking to call a witness without meeting the requirements of a regulation of which he was indisputably aware. I would follow the ruling of the Tenth Circuit in *Allen* and hold that the district court acted well within its discretion in excluding the testimony. Therefore, I respectfully dissent.