NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 14a0573n.06

No. 13-4350

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 28, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| NEVILLE LYIMO, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: ROGERS and KETHLEDGE, Circuit Judges; MALONEY, District Judge.[*]

MALONEY, Chief District Judge. A jury convicted Defendant-Appellant Neville Lyimo of ten counts of aiding and assisting in the filing of a false income tax return, in violation of 26 U.S.C. § 7206(2). At trial, Lyimo sought to introduce the testimony of David DeWeese, an assistant field officer for the Department of Homeland Security (DHS) within the Immigration Customs Enforcement (ICE) division. The Government filed a motion to quash the subpoena compelling DeWeese's testimony because Lyimo did not comply with federal regulations for subpoenaing third-party federal government employees, found in 6 C.F.R. §§ 5.41-.49. The district court granted the motion and DeWeese did not testify. After the jury returned guilty verdicts on ten of the seventeen counts charged, Lyimo filed a motion for acquittal and a motion for a new trial under Federal Rules

---

[*] The Honorable Paul L. Maloney, Chief United States District Judge, United States District Court for the Western District of Michigan, sitting by designation.

1

of Criminal Procedure 29 and 33, asserting that the jury's verdicts were against the great weight of the evidence. The district court denied both motions.

Lyimo raises two issues in this appeal. First, he argues that the district court erred by quashing the DeWeese subpoena. Second, Lyimo asserts that the district court erred when it denied his motion for a new trial under Federal Rule of Criminal Procedure 33. For the reasons below, we **AFFIRM** the district court.

## I.

While operating NetASk Tax Service, Neville Lyimo assisted a number of African immigrants in preparing their tax returns. In June 2011, a grand jury in the Southern District of Ohio issued a twenty-seven-count indictment alleging that Lyimo aided in the preparation of false tax returns for sixteen clients from 2004 through 2007 by inflating credits, claiming inapplicable deductions, and miscategorizing taxpayers' filing statuses. At the jury trial on seventeen of the counts, six witnesses testified that Lyimo incorrectly prepared their tax returns. The witnesses were all recent African immigrants and most admitted they were present in the United States illegally at some point.

To challenge the credibility of the Government's witnesses, Lyimo sought to introduce testimony concerning immigration laws from David DeWeese, a federal employee who was not involved in the investigation of this case. A general subpoena was sent directly to DeWeese, requesting that he or another agent testify concerning student and other visas. Lyimo's counsel noted later that the purpose of this testimony was to show that the witnesses (1) swore to follow certain visa requirements and failed to do so, and (2) may have faced immigration consequences if they admitted to a role in the tax fraud, thus insinuating that they may not have given truthful testimony.

2

The Government moved to quash the subpoena compelling DeWeese's testimony. It argued that Lyimo failed to follow the subpoena requirements for DHS employees, which require that the subpoena be served on the Office of General Counsel and that it describe with specificity the information sought. *See* 6 C.F.R. §§ 5.43, 5.45. Lyimo admitted that he failed to follow the subpoena requirements, but argued that the regulations did not apply to the information he sought and that his Sixth Amendment right to present witnesses on his behalf should take precedence over the CFR requirements. The district court granted the motion to quash, and DeWeese did not testify at Lyimo's trial.

A jury found Lyimo guilty on ten counts of aiding or assisting in the filing of a false income tax return but acquitted him on seven other counts. Then, Lyimo filed a motion for judgment of acquittal and a motion for a new trial under Federal Rules of Criminal Procedure 29 and 33. In the motion, Lyimo attacked the credibility of the taxpayer witnesses against him and asserted that the verdict was against the manifest weight of the evidence. Specifically, he argued that the Government failed to prove that certain witnesses were legally married or that Lyimo knew the IRS filings were false. Lyimo also claimed that the district court erred in excluding the testimony of Jerry Anderson, Craig Casserly, and David DeWeese. The district court denied the motion for a judgment of acquittal, finding that there was "more than sufficient evidence from which a reasonable mind might fairly conclude guilt beyond a reasonable doubt on all ten counts." R. 133, Page ID #2057. The court also denied the motion for a new trial under Rule 33, holding that there was no miscarriage of justice or prejudicial error relating to the guilty verdicts.

Now, Lyimo appeals the district court's decisions to quash the DeWeese subpoena and deny the Rule 33 motion for a new trial based on the weight of the evidence. First, he argues that the

3

exclusion of DeWeese's testimony was a violation of his Fifth and Sixth Amendment rights. Second, he argues that the district court abused its discretion by not granting a new trial. The Government responds by asserting that Lyimo does not have standing to challenge the constitutionality of the subpoena requirements, but that, even if he did, the requirements are constitutional. Further, the Government argues that the verdicts were not against the great weight of the evidence, so the district court did not err in refusing to grant the motion for a new trial.

## II.

Federal agencies are authorized by 5 U.S.C. § 301 to create regulations governing the conditions under which their employees may testify concerning their work. *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) (citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951)). Often called "*Touhy* regulations," procedures for subpoenaing employees of government agencies are contained in the Code of Federal Regulations. The Department of Homeland Security's regulations are found in 6 C.F.R. §§ 5.41-.49. The regulations require departmental authorization before a DHS employee may testify, specify what must be included in a subpoena, and provide that only the DHS General Counsel may accept service on behalf of DHS employees. *Id.*; §§ 5.43-.45.[1]

---

[1]The regulations state:

> (a) If official information is sought, through testimony or otherwise, by a request or demand, the party seeking such release or testimony must (except as otherwise required by federal law or authorized by the Office of the General Counsel) set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought. Where documents or other materials are sought, the party should provide a description using the types of identifying information suggested in § 5.3(b). Subject to § 5.47, Department employees may only produce, disclose, release, comment upon, or testify concerning those matters which were specified in writing and properly approved by the appropriate Department official designated in § 5.44. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). The Office of the General Counsel may waive the requirement of this subsection in appropriate circumstances.

§ 5.45.

4

In this case, Lyimo chose not to comply with these subpoena regulations and instead issued a general subpoena directly to DeWeese. Now, he argues that the subpoena requirements violate his Fifth and Sixth Amendment rights by creating one-sided discovery in favor of the government and infringing on his ability to present a defense.

We cannot reach the merits of Lyimo's constitutional arguments because he did not comply or attempt to comply with the subpoena regulations. The law of this circuit requires a defendant to follow the appropriate *Touhy* procedures and have his or her demand denied before questions about the constitutionality of the procedures may be entertained. *See United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981) (barring a Sixth Amendment claim because defendants failed to make the required demand to FBI and U.S. Marshals Office). Other circuit courts of appeals have likewise held that the failure to comply with subpoena regulations forecloses later challenges to these requirements. *See Soriano-Jarquin*, 492 F.3d at 504 ("[T]he defendant made no attempt whatsoever to comply with the DHS regulations. Given this, he can hardly be heard to complain that the regulations caused him injury."); *see also United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994) ("Because the defendants failed to make a timely demand in accordance with the required procedure set out in 28 C.F.R. § 16.23(c), we do not reach their constitutional claims.") (citing *Marino*); *United States v. Allen*, 554 F.2d 398, 407 (10th Cir. 1977) ("Since the defendant did not follow the procedure and submit the required summary of testimony desired, the Department made no decision whether the prosecutor could testify and we do not reach the constitutional claim."). Subpoena requirements protect the efficiency of the DHS and recognize its "legitimate interest in regulating

5

access to government information contained in its files or obtained by its employees during the scope of their official duties." *Marino*, 658 F.2d at 1125.

We are not persuaded by the Ninth Circuit's 2-1 decision in *United States v. Bahamonde*, 445 F.3d 1225 (9th Cir. 2006), cited by Lyimo. In *Bahamonde*, the defendant was allowed to raise a Fifth Amendment challenge despite his noncompliance with the subpoena regulations because he alleged that the procedure created a discovery imbalance in favor of the government. *Id.* at 1230-31. Bahamonde, like Lyimo, argued that the procedures impermissibly required him to reveal the substance of the government agent's testimony sought without requiring the government to reveal the evidence it would use to rebut that testimony. The Ninth Circuit allowed the constitutional challenge rather than require the defendant to first reveal information he argued he should not be required to reveal. *Id.* (citing *Wardius v. Oregon*, 412 U.S. 470 (1973)).

However, material factual differences exist between *Bahamonde* and the present case. In *Bahamonde*, the defendant sought the testimony of an agent who "attended the entire trial, sat next to the prosecutor at the prosecutor's table, assisted him throughout, and was listed on the government's witness list." 445 F.3d at 1228. Thus, there were obvious reasons to believe that the information in a subpoena to that agent would be revealed to the prosecution, creating unequal discovery. However, in *Marino* and the present case, testimony was sought from agents who worked in departments not involved in the investigation or prosecution of the case. *See Marino*, 658 F.2d at 1125 (seeking testimony from FBI and U.S. Marshals about witness protection program to impeach witnesses in a case investigated by DEA).

Here, DeWeese works within the DHS and had no involvement in Lyimo's case until he was subpoenaed to testify. He did not assist the prosecutor, sit at the prosecution's table throughout the

trial, or testify for the government. For these reasons, there is no indication that the information that was required to be included on the subpoena would have been shared with the prosecution. Thus, the Ninth Circuit's concern with forcing compliance with the regulations before a challenge can be heard–that the government would still get the benefit of the defendant's disclosures–is not an issue here. Accordingly, there is no reason to excuse Lyimo's failure to comply with the subpoena requirements. The holding in *Marino* applies to bar Lyimo's Fifth and Sixth Amendment claims here. Lyimo cannot raise his constitutional claims challenging the federal regulations that govern subpoenas of DHS employees because he did not attempt to comply with the required procedures.

**III.**

Next, Lyimo argues that the district court erred in denying his post-verdict motion for a new trial. When faced with a motion for a new trial under Federal Rule of Criminal Procedure 33, the district court sits as the "thirteenth juror," weighing the evidence and considering the credibility of the witnesses to determine if there has been a miscarriage of justice. *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979), *aff'd*, 633 F.2d 219 (6th Cir. 1980). District courts have discretion to grant new trials, but should do so only in "the extraordinary circumstance where the evidence preponderates heavily against the verdict." *Id.* at 593. The burden is on the defendant to prove that a new trial should be granted. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). When the government has presented enough evidence for a conviction but the judge disagrees with the jury's resolution of conflicting evidence, a reversal is appropriate on the ground that the verdict is against the manifest weight of the evidence. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998).

A district court's decision on a motion for a new trial is reviewed for abuse of discretion. *United States v. Fullerton*, 187 F.3d 587, 592 (6th Cir. 1999). The appeals court does not reweigh evidence or judge credibility. *United States v. Ashworth*, 836 F.3d 260, 266 (6th Cir. 1988). On appeal, this Court only determines whether the district court's decision was a clear and manifest abuse of discretion. *Id.*

Lyimo argues that the district court should have granted him a new trial because the witnesses against him were not credible. Under his theory, the Government's witnesses provided Lyimo with inaccurate tax information and lied at trial to avoid criminal investigation and possible deportation. The Government asserts that mere questions of credibility and testimony consistency do not demonstrate that a verdict is against the great weight of the evidence, and that the witnesses demonstrated their credibility by admitting wrongdoing and establishing a consistent pattern of conduct that would have been unlikely if Lyimo had not been involved.

In its opinion denying Lyimo's motion for a new trial, the district court wrote:

> There is no doubt that most of the witnesses who testified in this matter had some issues involving their immigration status. However, those witnesses admitted to their illegal immigration issues and the jury obviously chose to believe their testimony as it related to Defendant and his acts that formed the basis of the charges. The fact that the jury attached credibility to the testimony of those witnesses is not a miscarriage of justice. It is simply the prerogative of the jury. Defendant will not be heard to complain about credibility issues when the testimony of all the witnesses provided a sufficient basis to find Defendant guilty.

R. 133, PgID #2058.

Lyimo has not demonstrated any specific problems or conflicts so egregious or extraordinary to demonstrate that the district court abused its discretion by denying the motion for a new trial. *See Lutz*, 154 F.3d at 589. The verdicts against Lyimo were not unreasonable simply because he questions the taxpayers' credibility or because he created an alternative explanation for the incorrect

8

tax returns. *Porter v. Lima Mem. Hosp.*, 995 F.2d 629, 635 (6th Cir.1993) ( "[T]he verdict should not be considered unreasonable simply because different inferences could have been drawn or because other results are more reasonable."). The jury had all of the information concerning the witnesses' credibility. They were "free to draw inferences, assess witnesses' credibility, and interpret evidence for or against" Lyimo. *United States v. Harris*, 200 F. App'x 472, 503 (6th Cir. 2006). The district court did not clearly abuse its discretion when it reweighed the witnesses' credibility and the evidence presented at trial and determined that no error occurred. Lyimo has not established that the evidence preponderates heavily against the verdicts in this case, so the district court correctly denied him the extraordinary remedy of a new trial.

## IV.

For the reasons set out above, we **AFFIRM** the decision of the district court and Lyimo's conviction.